IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CHARLES P. RIDDLE, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:13-CV-110-WKW |
| | ) | [WO] |
| JACKIE GRAHAM, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Charles P. Riddle, III is a former state law enforcement officer with the Department of Conservation and Natural Resources ("DCNR"). While on duty, he was regrettably one of the persons who discovered the burned body of his missing sister. Mr. Riddle's sister's murderer bound her and left her in the trunk of a flaming car. Mr. Riddle was called upon to testify at the murder trial and sentencing.

After Mr. Riddle's sister's death, his work performance suffered. His supervisors became aware that Mr. Riddle was not working the hours that he reported working and that he used his state vehicle for personal hunting trips. When Mr. Riddle did not or could not refute their accusations, his supervisors recommended his termination. Mr. Riddle immediately visited a doctor who diagnosed him with post-traumatic stress disorder ("PTSD") related to the murder

of his sister, but an injury review board appointed by the DCNR found that his injury was the result of his willful conduct of participating in the investigation of his sister's death.  Mr. Riddle's employment was terminated, and he appealed his termination to an administrative law judge and the State Personnel Board.  Each affirmed the termination.   Mr. Riddle now sues the DCNR Commissioner, N. Gunter Guy, the State Personnel Director, Jackie Graham, the State Personnel Board as an entity, and the Personnel Board's members, Jon D. Barganier, John Carroll, Joe N. Dickson, Jackie Graham, Faye Nelson, and Joanne Randolph, for alleged violations of federal and state law.   Commissioner Guy is the only defendant facing federal-law claims.  Defendants jointly removed the case from state court.

Before the court are motions for summary judgment filed by Ms. Graham and the Personnel Board members (Doc. # 42)[1] and Defendant N. Gunter Guy (Docs. # 43, 44, 45).   Mr. Riddle opposes the motions (Docs. # 47, 48, 49). Defendants have replied.   (Docs. # 51, 52.)  Upon consideration of the parties' arguments, the evidence, and the relevant law, the court finds Commissioner Guy's motion for summary judgment is due to be granted with respect to Mr. Riddle's

---

[1] The document is titled "Respondents' Brief Opposing Petitioner's Complaint."  It has been construed as a motion for summary judgment.  (Doc. # 46.)

federal-law claims and that the remaining state-law claims against Commissioner Guy and the other Defendants are due to be remanded to state court.[2]

## I. JURISDICTION AND VENUE

The court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1441, and 1367. Personal jurisdiction and venue are uncontested.

## II. STANDARD OF REVIEW

To succeed on summary judgment, the movant must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The court must view the evidence and the inferences from that evidence in the light most favorable to the nonmovant. *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact.  *Id*.  Or a movant who does not have a trial burden of production can assert, without citing the record, that the nonmoving party "cannot produce admissible evidence to support" a material fact.  Fed. R. Civ. P. 56(c)(1)(B); *see also* Fed. R. Civ. P. 56 advisory committee's note ("Subdivision (c)(1)(B)

---

[2] The remaining arguments in support of Defendants' motions for summary judgment may be considered in state court upon remand.

recognizes that a party need not always point to specific record materials. . . .  [A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact.").  If the movant meets its burden, the burden shifts to the nonmoving party to establish – with evidence beyond the pleadings – that a genuine dispute material to each of its claims for relief exists.  *Celotex*, 477 U.S. at 324.   A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

## III.  BACKGROUND

**A.**   <u>**Facts**</u>

**1.**   *Parties*

Mr. Riddle is a former law enforcement officer for the DCNR who was assigned to District IV of the DCNR's Wildlife and Freshwater Fisheries Division. His duties included traveling Lee County, Alabama, to monitor hunting and fishing activities.

Commissioner Guy is the ultimate authority within the DCNR.  Ms. Graham is the Director of the State Personnel Department.  The Personnel Board is a state agency charged with reviewing personnel decisions of other agencies like the

DCNR.  Mr. Dickson chairs the Personnel Board, and Ms. Nelson, Mr. Carroll, Mr. Barganier, and Ms. Randolph are the other Board members.[3]

The Personnel Board members are sued in their official capacities only, but Ms. Graham and Commissioner Guy are each sued in both their individual and official capacities.  No misconduct is attributed to Ms. Graham in Mr. Riddle's complaint, and it is unclear why she is joined as a party to this suit.  (Compl. at ¶¶ 2–6.)

### 2.   *Mr. Riddle's Tenure with the DCNR*

Mr. Riddle worked for the DCNR from 2006 to 2012 and received favorable performance appraisals during his tenure.  On December 18, 2010, Mr. Riddle learned that his sister, who lived in Florida not far from Geneva County, Alabama, was missing.  At the time, Mr. Riddle was working in another county's field office, and his supervisor gave him permission to travel and to assist Geneva County Conservation Enforcement Officers in searching for his sister.  On December 20, 2010, Mr. Riddle and Officer Richard Mowbray found what remained of Mr. Riddle's sister's body.  Mr. Riddle's sister had been burned alive in the trunk of a car with her hands tied behind her back.  Mr. Riddle claims that the stress of the

---

[3] Alabama law provides that a petition for judicial review of an agency decision "shall name *the agency as respondent*."  Ala. Code § 41-22-20(h) (emphasis added).  The Personnel Board members dispute their joinder as respondents.

situation has caused him to suffer from PTSD, although he was not diagnosed with PTSD until 2012.

On March 18, 2011, Mr. Riddle emailed his supervisor, Captain Mike Pollard,[4] to inform him that he felt that he needed a break or that he might be "going crazy" because he had been forgetting things and making simple mistakes. (Compl. at ¶ 14.)  Captain Pollard and Division Chief Kevin Dodd did not inquire about Mr. Riddle's mental status when they saw him the following day.

At some point in the fall of 2011, Captain Pollard suspected falsifications in Mr. Riddle's reports of his activities, but according to Mr. Riddle, no one counseled him or made their suspicions known to him.  Captain Pollard says, however, that he made Mr. Riddle aware, as early as March 2011, that Mr. Riddle's weekly reports were inaccurate.  By February 2012, Captain Pollard noted that Mr. Riddle was making fewer arrests in the field.

The District Attorney in Holmes County, Florida, requested that Mr. Riddle review the evidence in his sister's murder case in December of 2011.  He was subpoenaed to attend her trial, which lasted from February 23, 2012, until March 2, 2012.  Mr. Riddle also attended the murderer's pre-sentencing hearing in April and his sentencing in May 2012.

---

[4] At the time, Captain Pollard was a lieutenant.

On April 21, 2012, Captain Pollard sent Mr. Riddle to the DCNR's headquarters "on a pretense and secretly placed a GPS tracking device" on Mr. Riddle's assigned state car.   (Compl. at ¶ 21.)   Captain Pollard says that he consulted with Chief Dodd about placing a trackstick on the car, read literature about the use of the trackstick, and tested it on his own car before employing it to monitor Mr. Riddle.

Subsequent review of Mr. Riddle's weekly reports revealed several discrepancies when compared with the trackstick data.  For example, Mr. Riddle drove his state vehicle on days that he reported being off-duty; Mr. Riddle did not drive his vehicle at all on days that he reported working in the field; Mr. Riddle visited his personally leased hunting property on days that he reported working; and Mr. Riddle did not work full days as indicated on his reports.

### 3.    *Disciplinary Action and Appeals*

On May 31, 2012, Mr. Riddle was summoned to the DCNR's headquarters. For the first time, he was confronted about allegedly falsifying documents by Chief Dodd, Captain Pollard, and Captain Lewis, who secretly recorded the meeting. During the meeting, Mr. Riddle says that he reported that he had been "having some problems since the discovery of his sister's body and requested help." (Compl. at ¶ 23.)  However, Mr. Riddle acknowledged that he had not maintained good reports, that he had travelled to his hunting property while on duty, that he

had gone hunting in his state vehicle three or four times, and that he had reported performing job duties on a day that he never left his home.

After the meeting, Mr. Riddle was instructed to make a written statement. He submitted two statements in which he admitted that he had not conducted patrols as he should, that he had not worked the hours that he reported, and that he had been at home worrying about personal problems. (Doc. # 10-2, at 271–73.) Chief Dodd, Captain Pollard, and Captain Lewis recommended Mr. Riddle's termination as a result of their investigation and Mr. Riddle's response.

In his defense, Mr. Riddle quickly submitted a forensic psychiatric evaluation prepared by Dr. Bruce Atkins in which Dr. Atkins diagnoses Mr. Riddle with PTSD and attributes its onset to Mr. Riddle's "job activities ordered by his superiors" in the search and recovery of his murdered sister. (Doc. #49-3, at 78.) Upon receipt of Dr. Atkins's evaluation, Commissioner Guy appointed an injury review board consisting of Chief Dodd, Officer David Smith, and Officer Daniel Boutwell. Mr. Riddle complains that this review board did not interview him or Officer Mowbray, who witnessed Mr. Riddle's response to the discovery of his sister's body. Additionally, he alleges that Commissioner Guy did not properly appoint the Injury Review Board and that its members, particularly Chief Dodd, were biased. The Injury Review Board submitted its findings to Commissioner Guy in a memorandum dated June 27, 2012. (Doc. # 45-4, at 3–4.) The Personnel

Board concluded that Mr. Riddle's reported work-related injury "did not occur within the parameters" set by Alabama law because Mr. Riddle's "presence at the scene of the incident [was] a direct result his own willful conduct." (Doc. # 45-4, at 4.)

After a hearing on June 28, 2012, Commissioner Guy terminated Mr. Riddle's employment with the DCNR. The DCNR's Notice of Termination and Right to Appeal dated July 2, 2012, states that Mr. Riddle was fired for insubordination, falsifying records, leaving before the end of his shift, and using state equipment for personal use. (Doc. # 10-1, at 45.) Mr. Riddle appealed. On September 12–13, 2012, Mr. Riddle was provided a hearing before an administrative law judge ("ALJ") with the State Personnel Department. The tape of the May 31, 2012 meeting was played for the ALJ who admitted it as an exhibit. Mr. Riddle complains that the DCNR did not disclose the recording to him prior to the hearing, in spite of Mr. Riddle's request for such information.[5] The ALJ ultimately affirmed Mr. Riddle's termination. Mr. Riddle appealed the ALJ's ruling to the Personnel Board, which held a hearing on December 19, 2012, and likewise upheld the termination. (Doc. # 10-1, at 235–38.)

Mr. Riddle alleges that both the ALJ and the Personnel Board erroneously decided that Mr. Riddle is not protected by the Americans with Disabilities Act

---

[5] Defendants stress that Mr. Riddle's counsel admitted to the ALJ that he thought the audio "helped us more than it hurt us." (Doc. # 10-1, at 364.)

9

("ADA").  (Compl. at ¶¶ 35–36.)  However, there is no claim for relief under the ADA.  (*See* Compl. at 6–9.)  Mr. Riddle further complains in his brief – not his pleading – that the Personnel Board violated his rights by going into executive session before publicly voting to uphold Mr. Riddle's termination.  He asserts in his brief that "[t]here is no procedure established by any rule or regulation that allow[ed] [the Personnel Board] to go into 'executive session'" under the circumstances presented by his case (Doc. # 48, at 10) and that it was Ms. Graham's duty to prepare and recommend such a rule to the Personnel Board (Doc. # 48, at 11).  He also claims that the Personnel Board violated his rights by announcing its decision while he was not present – another fact not pleaded in the Complaint.  (Doc. # 48, at 12.)

## B.   Procedural History

### 1.   *State-Court Complaint*

Mr. Riddle filed a three-count complaint in the Circuit Court of Montgomery County, Alabama, on January 29, 2013.[6]  Count I is a petition for judicial review of the decision of the ALJ and the Personnel Board, brought pursuant to the Alabama Administrative Procedure Act ("AAPA"), *see* Ala. Code § 41-22-1 *et seq*.  Mr.

---

[6] Defendants stress in their briefing that Mr. Riddle failed to file a timely notice of appeal with them before filing his complaint in circuit court.  The Personnel Board transmitted the record of his appeal to the circuit court.  (*See* Docs. # 10-1, 10-2, 10-3.)

Riddle requests that the court set aside and hold invalid the Personnel Board's decision and order his reinstatement with full back pay and benefits.

Count II is a constitutional claim for denial of due process and equal protection against "the DCNR," which is not a named defendant, for its failure to apply its policy of "progressive discipline" against Mr. Riddle.  (Compl., at ¶ 40.) Mr. Riddle alleges that "the DCNR" violated his rights to equal protection and due process as guaranteed by the U.S. and Alabama Constitutions.  (Compl., at ¶ 39 (citing  Ala. Code § 36-21-13).)  The complaint does not state that Count II is brought pursuant to 42 U.S.C. § 1983, but Commissioner Guy assumes and proceeds as though it is.[7]  Mr. Riddle seeks compensatory and punitive damages on his constitutional claims.   Count II contains no request for reinstatement or prospective equitable relief, although Mr. Riddle asks for reinstatement in Counts I and III.

Count III is an ambiguous state-law claim that Commissioner Guy failed to properly appoint an injury review board in accordance with state law.  (Compl. at ¶¶ 43–44 (citing Ala. Code § 36-21-13).)  Section 36-21-13 does not create a private right of action under state law against a state agency head who neglects to follow the statute's directives for appointing injury review boards.  Commissioner

---

[7] Section 1983 provides that "[e]very person who, under color of any [state law], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

Guy muses that Count III is perhaps some sort of tort claim for negligence or wantonness. (*See* Doc. # 44, at 15.) Mr. Riddle asks that a jury be permitted to determine that he was injured while on duty and that the court require the DCNR to reinstate his salary and benefits until he is able to return to work.

### 2. *Federal-Court Proceedings*

Defendants jointly removed the case to federal court on February 20, 2013, citing this court's federal-question jurisdiction over Count II. (Doc. # 10, at ¶ 4.) The Personnel Board, its members, and Ms. Graham untimely moved to dismiss Count I for failure to state a claim. The Personnel Board members and Ms. Graham likewise sought dismissal from the case as defendants because the AAPA provides that the petition for review shall name the agency that rendered the decision as the respondent. The court denied the motion to dismiss. (Doc. # 38.)

## IV. DISCUSSION

For reasons to be discussed *infra* at Part IV.C., the court addresses only the defenses and summary judgment arguments associated with Mr. Riddle's federal constitutional claims raised against "the DCNR" in Count II of the Complaint. Commissioner Guy proceeds on the assumption that Mr. Riddle attributes the DCNR's alleged misconduct to him.

A.   <u>**Immunity Defenses**</u>

Commissioner Guy raises several immunity defenses in his motion for summary judgment.  Mr. Riddle's brief is altogether unresponsive to these arguments, as well as the immunity defenses raised by the other Defendants.  (*See* Doc. # 48.)

1.   ***Eleventh Amendment Immunity***

Commissioner Guy asserts that Mr. Riddle's federal-law claims against him in his official capacity are barred by the Eleventh Amendment.  (Doc. # 44, at 16–17.)  The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  "[B]y its terms the Amendment applies only to suits against a State by citizens of another State," but the Supreme Court "ha[s] extended the Amendment's applicability to suits by citizens against their own States."  *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001).  Moreover, "[l]awsuits against a state official in his or her official capacity are suits against the state when 'the state is the real, substantial party in interest.'"  *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1524 (11th Cir. 1990) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984)).

There are two exceptions to Eleventh Amendment immunity:  where Congress abrogates state immunity pursuant to its power to enforce Section 5 of the Fourteenth Amendment; or where a state expressly waives its immunity through legislative action.  *Id.* at 1524–25.  Neither exception applies in this case.

In a similar vein, Commissioner Guy contends that states are not "persons" subject to suit under § 1983, and a suit under § 1983 against a state official "is no different from a suit against the State itself."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Upon consideration of these authorities, the court finds that Commissioner Guy is entitled to Eleventh Amendment immunity against Mr. Riddle's federal-law claims against him in his official capacity.[8]  Furthermore, even without Eleventh Amendment immunity, any § 1983 claim against Commissioner Guy in his official capacity is due to be dismissed as a matter of law.

### 2.   *Qualified Immunity*

Commissioner Guy also raises qualified immunity as a defense to the federal-law claims raised against him in his individual capacity.  (Doc. # 44, at 18–20.)  Qualified immunity is a defense to a § 1983 action against a government official sued in his individual capacity.  Under the doctrine, "government officials

---

[8] The Personnel Board members and Ms. Graham raise Eleventh Amendment immunity as a defense against any claims against them in their official capacities (Doc. # 42, at 20–22), but the court cannot discern any federal-law claims against them in Mr. Riddle's Complaint, and for the reasons stated *infra*, the state-law claims are due to be remanded to state court.

performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Commissioner Guy contends that his allegedly unlawful actions (failing to produce a recording and improperly overseeing the administration of progressive discipline) were within his discretionary authority as DCNR Commissioner.  He further contends that his actions, taken in the light most favorable to Mr. Riddle, do not show that he violated Mr. Riddle's constitutional rights to due process or equal protection.

Indeed, there are no allegations or arguments that Commissioner Guy deprived Mr. Riddle, prior to termination, of notice of the charges against him, of an explanation of the DCNR's evidence of his misconduct, or of the opportunity to present his side of the story.  *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) (requiring these basic protections).  Nor are there allegations or arguments that Mr. Riddle was treated differently than other similarly situated public employees on the basis of his membership in a class.  *See Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 594 (2008) (acknowledging the equal protection of public employees who are treated differently because of the membership in a class but rejecting the "class-of-one" theory of equal protection in the context of public employment); *Alford v. Consol. Gov't of Columbus, Ga.*, 438

F. App'x 837, 840 (11th Cir. 2011) (affirming the extension of *Engquist*'s holding in the context of merit system state employees).  In the absence of evidence that Commissioner Guy committed a clearly established constitutional violation, he is entitled to qualified immunity on the individual capacity claims in Count II.[9]

## B.   **Merits-Based Arguments**

Even without qualified immunity, it would be appropriate to grant summary judgment in favor of Commissioner Guy on the federal-law claims.  Commissioner Guy argues that Count II is devoid of facts attributing unlawful actions to him personally.   Both of the allegedly wrongful actions supporting Count II – specifically, (1) the non-disclosure of the recording of the May 31, 2012 meeting prior to its introduction as evidence in the hearing before the ALJ, and (2) the lack of "progressive discipline" in Mr. Riddle's case – are attributed to either "the DCNR" generally or to Mr. Riddle's "immediate supervisor," but not to Commissioner Guy.  (Compl. at ¶¶ 39–41.)  Commissioner Guy contends that "[n]either the transcript of [Mr.] Riddle's termination hearing regarding the dispute over this recording nor any other evidence . . . show any participation whatsoever by Commissioner Guy in the termination hearing."  (Doc. # 44, at 9.) Commissioner Guy further contends that, to the extent that Mr. Riddle complains

---

[9] Ms. Graham also raises qualified immunity as a defense to any federal-law claims against her in her individual capacity (Doc. # 42, at 18–20), but the court cannot discern any claim against her in Mr. Riddle's Complaint – federal or otherwise.  (*See generally* Compl. (identifying Ms. Graham in ¶ 2 and never mentioning her again).)

that Commissioner Guy's subordinates violated Mr. Riddle's rights, there is typically no *respondeat superior* or vicarious liability under § 1983. *See Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). For these reasons, Commissioner Guy argues that he is entitled to summary judgment on the merits of the federal-law constitutional claims in Count II. (*See* Doc. # 44, at 9–11.)[10]

In Mr. Riddle's response to Commissioner Guy's motion for summary judgment, Mr. Riddle devotes his attention to his claim that the DCNR's Injury Review Board did not lawfully handle his claim that he suffered an on-the-job injury that affected his job performance. (Doc. # 48, at 15–22.) The Injury Review Board's appointment and procedures are at issue, not in Count II, but perhaps in Count III. (*See* Compl. at 8–9.) Mr. Riddle asserts at one point that "[t]he entire Injury Review Board procedure . . . violated [his] due process and equal protection rights," (Doc. # 48, at 19), but Mr. Riddle does not offer any legal authority explaining how federal law was violated.[11] Significantly, Mr. Riddle's brief includes no discussion of the two issues denominated in Count II – the audio recording presented during the hearing before the ALJ or the DCNR's lack of "progressive discipline," and Mr. Riddle does not rebut any of Commissioner

---

[10] Commissioner Guy also argues that he is entitled to summary judgment on the merits of Mr. Riddle's similar state-law constitutional claims contained in Count II. (*See* Doc. # 44, at 11–13.) For reasons to be discussed *infra*, the court declines to consider the merits of any state-law claims.

[11] Furthermore, Mr. Riddle may not amend Counts II and III through summary judgment briefing. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).

17

Guy's arguments in favor of summary judgment on Count II.   Commissioner Guy therefore avers that Mr. Riddle has abandoned the claims in Count II.  (Doc. # 52, at 2–3.)

It is well-settled in this Circuit that "grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned" and "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc).  For this reason, Commissioner Guy is entitled to summary judgment on the merits on the basis of Mr. Riddle's abandonment of Count II as pleaded in the Complaint.

However, the Circuit has also held that a court may not enter summary judgment on claims in the absence of a response from the non-moving party unless the moving party satisfies Rule 56(a).  *See United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004) ("[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion.").  Therefore, the court also finds that Commissioner Guy's motion for summary judgment on the federal constitutional claims in Count II is well-taken on its merits because:  (1) Mr. Riddle has not ascribed any of the misconduct alleged

in Count II to Commissioner Guy personally; and (2) on this record, Commissioner Guy is not liable under § 1983 for the misconduct of his subordinates.

In summary, Commissioner Guy is entitled to summary judgment on Mr. Riddle's federal-law claims.

## C.      Propriety of Remand of Remaining State-law Claims

Count II's federal-law constitutional claims were the basis for this court's jurisdiction pursuant to Defendants' notice of removal under 28 U.S.C. § 1441(a). (*See* Doc. # 10, at ¶ 4.)  Although Mr. Riddle's federal-law claims are due to be dismissed, the court has authority to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state-law claims in Counts I, II, and III that arise from the same facts.  *See Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1567 (11th Cir. 1994).  But a federal court has discretion not to exercise supplemental jurisdiction once it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).  "Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction."  *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997).   In this instance, the consideration of comity prevails.  Resolution of Counts I and III depend heavily upon application of Alabama law and the interpretation of Alabama statutes, and

"[s]tate courts, not federal courts, should be the final arbiters of state law." *Id.*[12]

"[C]oupled with the [c]ourt's discretion to exercise supplemental jurisdiction under § 1367(c)," the court concludes that Mr. Riddle's remaining state-law claims "are best resolved" in Alabama's courts. *Id.*

"[W]hen a court has discretionary jurisdiction over a removed state-law claim and the court chooses not to exercise its jurisdiction, remand is an appropriate alternative." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 354–55 (1988). Therefore, this action is due to be remanded to state court for resolution of the remaining state-law claims.

## V. CONCLUSION

In accordance with the foregoing findings, it is ORDERED that:

(1)   Commissioner Guy's motion for summary judgment (Doc. # 43) on Mr. Riddle's federal-law claims is GRANTED;

(2)   Mr. Riddle's federal-law due process and equal protection claims, set out in Count II of the complaint, are DISMISSED with prejudice; and

---

[12] It is true that Mr. Riddle's AAPA claim (Count I) alleges that that the Personnel Board violated his rights to equal protection and due process, and the Personnel Board has defended itself by relying on some federal case law, but an AAPA claim arises from a right to judicial review created by an Alabama statute, and many of the Personnel Board's more fundamental defenses relate to Alabama's courts' interpretation and application of that statute. Most of those defenses rely on clearly articulated decisions of Alabama's courts, but in the event that the disposition of any of Mr. Riddle's claims turns on an interpretation or application of Alabama Code § 36-21-13, there are no published Alabama decisions discussing that law or explaining what relief is available to a person like Mr. Riddle who asserts that the law was improperly applied to his claim that he was injured on the job.

(3)    The pending state-law claims set out in Counts I, II, and III, and Defendants' pending motions for summary judgment on the same, are REMANDED to the Circuit Court of Montgomery County.

The Clerk of the Court is DIRECTED to take the necessary steps to effectuate the remand.

A separate final judgment will be entered as to Mr. Riddle's federal-law claims.

DONE this 20th day of January, 2015.

<u>          /s/ W. Keith Watkins          </u><br>
CHIEF UNITED STATES DISTRICT JUDGE